## Himyar Coal Corporation v. Miller.

(Decided Dec. 12, 1933.)

CRAFT & STANFILL for appellant.

EVERSOLE & EVERSOLE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

David Miller was employed as a coal miner by the Himyar Coal Corporation, appellant herein. On December 5, 1930, Miller filed his application with the Workmen's Compensation Board alleging that on November 17, 1930, while engaged at his work, he was pushing a mine car on the tracks in the mine, and the car wrecked or slipped from the rails, and, while he was lifting at the car in an effort to put it back on the tracks, a tie slipped from under the car and threw him backwards, and as a result he sustained an injury. He reported this injury to the mine foreman and the doctor. On a hearing before the board, Miller described his injury, detailing how it happened and the effects it

had on him at the time. He was examined by a number of doctors, all of whom are in agreement that Miller had an inguinal hernia on both the right and left sides, making a double hernia. Dr. Taylor Hurst testified that Miller came to him on the day after he claimed he was injured and told him that he had injured himself, and upon examination he found that Miller had a hernia on both sides, but there was no soreness or tenderness or anything which would indicate a hernia of recent origin. R. R. Wheeler, general manager of the Himyar Coal Corporation, testified that Miller came to him and complained that he had hurt himself about 3 weeks previously, and asked him for work on the outside of the mine; and that he placed Miller at outside work, beating up rock with a 25-pound sledge hammer; and that this was harder work than loading coal; that Miller continued on this job, beating rock, for about 3 weeks, during which time he made no further complaint about any injury, and never showed any sign at any time of being sick or anything wrong with him. This was previous to the time he called the doctor and complained that he had injured himself in the mine. Dr. Hurst was asked that if Miller had suffered this double hernia on November 17, and worked every day the mine ran until some time in the latter part of November or the first of December, when he asked for an outside job, and was placed by the manager of the company at work beating rock with a 25-pound sledge hammer, and assuming that he had been loading coal until he was placed on the outside work, to tell the board whether or not a man with a double hernia, if it was of recent origin, or had happened on November 17, could have done this sort of work. The doctor's answer was that he did not believe that a man could have done that kind of work if he had sustained this hernia at the time he claims he did, and that he could not have continued to work at all because he would have been so sore that he could not perform any work; that it had been his experience that, when a man suffered a hernia, the place becomes sore, tender on pressure, and, where the ring is drawn through, it leaves the muscle strictures so sore and tender that it is almost impossible for a man to continue at work. Dr. Snyder examined Miller, and his evidence is practically the same in substance as that of Dr. Hurst. S. A.

Douglas, bookkeeper for appellant, testifying from the pay roll and records of the company, stated that Miller had worked 14 days in the last half of October, 11 days in the first half of November, and 11 days the first half of December and 12 days the last half of December, and showed that his earnings were about the same for each half. There is other evidence similar in nature to the evidence above stated, but, as the case will be determined on the evidence of a later hearing, it is not necessary to further detail the evidence produced on the first hearing. Upon the conclusion of the evidence for both parties, the board entered an order May 19, 1931, finding that Miller sustained a double hernia November 17, 1930, as alleged in his application, and ordered the defendant, appellant herein, to tender to the plaintiff a radical operation for the correction of the double hernia and to pay plaintiff compensation at the rate of $11.70 per week for disability following the operation.

A motion for a full board hearing was made by the appellant on July 21, 1931, which was granted, and, upon a consideration on a full board review, the previous order of May 19, 1931, was sustained.

Thereafter appellant filed its motion to reopen the case and to set aside the two previous orders and to enter in lieu thereof an order dismissing the claim because of fraud practiced upon appellant by appellee, Miller. Upon a hearing by the board on the motion to reopen, the board reopened and redocketed the case for further trial and rehearing.

On the trial on the reopening, R. R. Wheeler testified that, after the award was entered May 19, 1931, David Miller came to him and told him that he received his injury at Elsiecoal, before he came to work for appellant company, and that he had signed papers up there (meaning with Elsiecoal) and had received a part of his compensation for the injury, and had signed an agreement with Atlantic States Coal Corporation, and that he brought this suit against the Himyar Coal Corporation "to gain a point," but never explained what the point was. And further said that "in the wind-up it wouldn't be anything against my company" (meaning the appellant). Wheeler stated that Miller made the above statements in the presence of Mr. Douglas, the

bookkeeper. Mr. Douglas testified that he was present and heard the conversation between Miller and Mr. Wheeler, and that he heard Miller tell Wheeler that he got the hernia up at some mine above there, but he did not remember what mine, but gave it as his best belief and impression that it was at Elsiecoal, and further stated that Miller said that in a couple of weeks or 10 days he would dismiss the suit as against Himyar Coal Corporation. Douglas further stated that Miller said that he had got part pay for the hernia from Elsiecoal.

With the motion to reopen the case there was filed a copy of an agreement between Dave Miller and the Atlantic States Coal Corporation in settlement for an injury received by Miller sustained on February 21, 1930, and giving the nature of the injury right side hernia and the period of disability from February 21, 1930, and continuing 52 weeks at $3 per week. There was also filed the affidavit of Dr. Collier, who was an employee of the Atlantic States Coal Corporation at Elsiecoal, Ky., during the year of 1929, in which he stated that David Miller sustained an injury about the fall of 1929, growing out of and in the course of his employment with the said coal company, that he saw and treated Miller for the injury received, and the injury was an inguinal hernia, and that Miller was paid compensation for the injury. He further stated that of his own personal knowledge Miller refused an operation to relieve his condition, which operation was offered him by the coal company. The deposition of Felix S. Dumas was taken, and he testified that he knew David Miller, colored, but did not know anything about an accident on the 17th day of November, 1930, but that he had settled a claim with the same David Miller with reference to a hernia; that on February 21, 1930, David Miller was working for the Atlantic States Coal Corporation at Elsiecoal, Ky., and alleged to have sustained an injury on February 21, 1930, causing hernia on the right side; that on about May 23, 1930, he (Dumas), in company with Dr. Collier of Whitesburg, Ky., went to David Miller's home in the vicinity of Elsiecoal and made a settlement with Miller for the hernia condition, and that Miller refused an operation for the hernia, but they paid him $150 for the alleged injury. Mr. Dumas stated that Miller signed a receipt for the settlement. A copy of the receipt is in the rec-

ord, which discloses that Miller received $150 for an injury suffered on or about the 21st of February, 1930, while in the employ of the Atlantic States Coal Corporation No. 2.

Miller denies making the alleged statements to Wheeler, and denies that he was injured previously to his employment with appellant company, and reiterates, in substance, his statements and evidence given on the first hearing. The board, upon the conclusion of the evidence of the rehearing, entered its order setting aside its previous order allowing appellee compensation, and found as a matter of fact that Miller had practiced a fraud upon appellant, in that he had received the injury complained of previous to his employment with appellant, and had received pay for such injury, and had failed to prove to the satisfaction of the board that the hernia complained of did not exist in any degree prior to the alleged injury for which compensation is claimed, and citing section 4884, Kentucky Statutes, which provides:

"In all claims for hernia resulting from injury received in the course of and resulting from the employee's employment it must be definitely proved to the satisfaction of the board * * * that the hernia did not exist in any degree prior to the injury for which compensation is claimed."

The board further found from the evidence that the hernia for which plaintiff claims compensation existed in some degree prior to November 17, 1930, the alleged date of the injury, and set aside the award of May 19, 1931, and dismissed the application.

Appellee then filed his petition for review in the Perry circuit court. Upon a review of the record, the circuit court set aside the last order and award of the board, and reinstated the previous order of May 19, 1931, and adjudged that the appellant pay appellee the sum of $250, with 6 per cent. interest thereon from the 19th day of May, 1931, until paid, in addition to the award allowed by the board. Later, upon a motion to set aside the judgment, the court modified the judgment and adjudged that the appellant pay appellee the sum of $250, with interest, in lieu of all other compensation, and in lieu of the order and award entered by the board.

May 19, 1931, and from that judgment this appeal is prosecuted.

The decisive question on this appeal is whether or not there was sufficient evidence to sustain the finding of the board on the reopening of the case on the question of fraud. When the case was reopened on the question of fraud, the board was the judge of the evidence, and its finding thereon will be given the same consideration as its findings on other questions of fact. A resume of the evidence having been stated, it is not necessary to reiterate or repeat the evidence. It is sufficient to say that it is our conclusion that the evidence is sufficient to sustain the finding of the board. That a finding of fact by the board is conclusive on the courts is so well settled citation of authority is hardly necessary. It has been repeatedly held by this court in an unbroken line of decisions that the courts will not disturb a finding of fact by the board when supported by any evidence of a competent and probative nature carrying the substance or weight of evidence. Hazard Blue Grass Coal Corp. v. Scott, 206 Ky. 759, 268 S. W. 548; Hazard Blue Grass Coal Corp. v. Clemens, 209 Ky. 486, 273 S. W. 47; Beaver Dam Coal Co. v. Hocker, 202 Ky. 398, 259 S. W. 1010.

In view of the evidence of Wheeler, Douglas, and others regarding the statements made by Miller relating to the alleged injury having been received prior to his employment with appellant company, and the evidence of Mr. Dumas, the insurance adjuster, relating to the settlement with Miller for the alleged injury, and the records and receipts signed by Miller relating thereto, it could not be said that these facts, notwithstanding some contradiction, do not carry the weight and substance of evidence. It is our view that the evidence is not only merely sufficient to support the finding of the board, but that the great weight and preponderance of the evidence is to the effect that Miller's alleged injury was received by him, at least in some degree, previous to his employment with the appellant, and that the evidence fully and amply supports the finding of the board.

Wherefore the judgment of the circuit court is reversed, with directions to set aside the judgment and reinstate the last finding of the board, and for proceedings consistent with this opinion.